**DODS SHIPPING LIMITED OF NASSAU, N. P., claimant and owner of SS NORCO, Appellant,**

v.

**KAROBI LUMBER COMPANY,**
Appellee.

**No. 23702.**

United States Court of Appeals
Fifth Circuit.

June 21, 1968.

Alex F. Lankford, III, Mobile, Ala., for appellant.

John H. Tappan, Mobile, Ala., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

McRAE, District Judge:

This is an appeal from an order of the District Court for the Southern District of Alabama providing, subject to proof of damages, that libelant Karobi Lumber Company (Karobi) recover from the owners of the SS Norco. Two libels were filed, one on behalf of Karobi, as consignor, and the other on behalf of Bacon-McMillan Veneer Manufacturing Company, the consignee. The two cases were consolidated for trial, and it was agreed at the pre-trial conference that either would be permitted to proceed. Libelants elected to proceed with the Karobi libel.

Karobi's theory was that because of the defective tubing in the ship, the Norco was unseaworthy, and the carrier had therefore violated its duty under the Carriage of Goods by Sea Act (Cogsa), 46 U.S.C. § 1300, et seq., and particularly 46 U.S.C. § 1303(1) (a).

Dods Shipping Limited of Nassau, N.P., claimant and owner of the SS Norco (Dods) argued that since the voyage was under a charter, the provisions of Cogsa did not apply. 46 U.S.C. § 1305. In addition, Dods asserted that it had proved the exercise of due diligence and was therefore relieved of liability under 46 U.S.C. § 1304(1). The critical provisions of Cogsa under the facts of the present case are found in 46 U.S.C. § 1305, as follows:

> * * * The provisions of this chapter shall not be applicable to charter parties; *but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter.* Nothing in this chapter shall be held to prevent the insertion in a bill of lading of any lawful provisions regarding general average. [Emphasis added.]

The record is confusing and unclear as to the contractual agreements under which the Norco operated. It is plain however, that Dods was the owner of the vessel and originally chartered her to Ships and Cargoes, Inc., although she was operated by Lumber Carriers, Ltd. (composed apparently of one Tibbetts, who was also chief engineer, and one Sullivan). The record further shows

that before the voyage in question Ships and Cargoes, Inc. failed to meets its obligations under the charter, and Lumber Carriers, Ltd. chartered the vessel directly from Dods on a bareboat charter.

The asserted liability arises out of alleged damages to a cargo of virola logs carried by the SS Norco from San Lorenzo, Ecuador, to Mobile, Alabama. The evidence showed that these logs, if allowed to remain out of water longer than one month, become infested with worms and split, thereby virtually destroying their value. The normal time for a cargo to reach Mobile from San Lorenzo is eight to twelve days. The Norco left San Lorenzo on October 19, 1963, and did not arrive in Mobile until February 17, 1964. Karobi argues that this delay caused the logs to become so wormy and split that they were greatly reduced in value, with the resulting losses claimed. The trees, after being cut at the "proper stage of the moon," were loaded with at most only minor splits. From the evidence produced at the trial, the court found in effect that the trees at the time of loading were in good condition.

Two bills of lading were introduced at the trial.

■■■ The Norco had two scotch boilers which functioned by passing water through a series of tubes, there being two hundred tubes to each boiler, in order to generate steam. Prior to the voyage, the ship had undergone repairs at Port of Spain where twenty tubes were replaced, and also at Curacao, Netherlands. During the first portion of the voyage, the ship had several tube failures and by the time it reached Cristobal it was obvious that the tubes had badly deteriorated. From November 7, 1963, until January 27, 1964, the ship remained at Cristobal where ninety per cent of the tubes were replaced. An additional week of delay was caused by domestic violence in Panama. Twelve miles from Tampa, the ship's fuel gave out and she was towed into port arriving approximately February 11, 1964.

The remaining tubes, which had been giving the ship trouble, were replaced and the ship then proceeded to Mobile. At the time of outturn at Mobile, the logs were materially and significantly deteriorated and not fit for their intended purpose. The district judge, in a very carefully reasoned opinion, determined that the Act applied and that consequently a lien on the ship was created if Karobi sustained its proof. By proving unseaworthiness, the receipt of the cargo in good order at the time of embarkation, and outturn in bad condition on arrival, Karobi established a prima facie case. The judge further found in effect that, applying 46 U.S.C. § 1304(1), whenever loss or damage results from unseaworthiness, the burden of proving the exercise of due care is upon the carrier or other persons claiming exemption under the provisions of that section. With this criterion in mind, the court further found that Dods had failed to establish the exercise of due diligence or to bring itself within any other exception of the Act. Considering the facts bearing upon the condition of the boilers, and further considering the inordinate lapse of time required to make the voyage from San Lorenzo to Mobile, it is apparent from the record that exception (2) (p) of § 1304, dealing with latent defects not discoverable by due diligence was completely unavailable to Dods. In the summary, the court found that under Cogsa a ship is liable for the performance of the duties imposed by the statute, including seaworthiness; that Cogsa does not apply to charter parties, but that this holds true only so long as a charterer does not issue bills of lading. In the present case, the record clearly shows that bills of lading were used.

■■■ The question of whether a lien prohibition clause in a charter party agreement can defeat the shipper's maritime lien is considered in United States v. S.S. Lucie Schulte, 343 F.2d 897 (2d Cir. 1965). The nature of the injury in S.S. Lucie Schulte, which was the overpayment of freight charges, readily dis-

tinguishes that case from the present case. The gist of the injury complained of in the present case is breach of duty to provide a seaworthy ship, and the evidence overwhelmingly sustains the lack of seaworthiness of the SS Norco. Dods contended that Compagnie De Navigation v. Mondial United Corp., 316 F.2d 163 (5th Cir. 1963) was governing. The general rule that a charter party can expressly restrict liability of the vessel is stated in that case. Such statement, however, must be qualified by the fact that the exemptions are permissible only so long as not rendered void by the statute. Therefore, even in view of the fact that Karobi had reason to know of the existence of a charter party the lien prohibition clause contained in the charter party is unenforceable by virtue of the express provisions of 46 U.S.C. § 1303(8).

The judgment of the trial court is

Affirmed.